UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELLY D., | : | |
| | : | **MEMORANDUM &** |
| Plaintiff, | : | **ORDER GRANTING** |
| | : | **MOTION TO AFFIRM** |
| -against- | : | **DECISION OF THE** |
| | : | **COMMISSIONER OF** |
| COMMISSIONER OF SOCIAL SECURITY, | : | **SOCIAL SECURITY** |
| | : | |
| Defendant. | : | 3:23-CV-00337 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Elly D.[1] commenced this action to seek judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") ruling that she is not entitled to Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed a motion setting forth the reasons why the Commissioner's decision should be reversed. (ECF No. 15.) The Commissioner filed a cross-motion to affirm the decision. (ECF No. 20.)

For the reasons set forth below, Plaintiff's motion is **denied** and Defendant's motion is **granted**.

**I.    BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in the statement of facts in the Commissioner's memorandum (ECF No. 20-1 at 2–4), which the Court adopts and incorporates by reference.

---

[1] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

On July 3, 2019, Plaintiff applied for SSI, alleging disability beginning on October 1, 2018. (Certified Administrative Record ("R."), at 242–51.[2]) Plaintiff's claims were denied on June 3, 2020. (R. at 120–24.) Plaintiff's claims were again denied upon reconsideration on April 16, 2021. (R. at 132–34.) On April 19, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 135.) Plaintiff, Plaintiff's attorney (Richard B. Grabow), and an impartial vocational expert (Hank Lerner) participated in a hearing before an ALJ (Judge John Aletta) on November 16, 2021. (R. at 37.) On December 16, 2021, Plaintiff's counsel submitted a request to amend the disability onset date to January 1, 2020. (R. at 379.)

On January 20, 2022, the ALJ found Plaintiff to be not disabled under section 1614(a)(3)(A) of the Social Security Act, and thus not entitled to SSI. (R. at 11.) Subsequently, the Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for appellate review. (R. at 1.)

Plaintiff filed the instant action on March 14, 2023. (ECF No. 1.) On June 9, 2023, Plaintiff moved to reverse the decision of the Commissioner. (ECF No. 15.) Defendant cross-moved on August 9, 2023. (ECF No. 20.) Plaintiff replied to Defendant's motion on August 17, 2023. (ECF No. 21.)

II.     **STANDARD OF REVIEW**

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the

---

[2] "R." refers to the Certified Administrative Record filed at ECF No. 10. The pagination refers to the pagination on the bottom right-hand corner of the record, as opposed to the ECF pagination.

record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled, thus qualifying a claimant to benefits, a claimant must be unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(a)). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)." *Schillo*, 31 F.4th at 70.

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her

3

past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). The Commissioner considers whether "the combined effect of all [] impairments . . . would be of sufficient severity" to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved for the SSA, the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

## III. DISCUSSION

Plaintiff raises three arguments in her motion: 1) substantial evidence does not support the assigned residual functional capacity ("RFC"); 2) the ALJ erred in determining that Plaintiff did not meet or equal Listing 1.15; and 3) the ALJ's decision is not sufficiently detailed to allow review by the Court. The Court addresses each of these objections in turn.

### A.     Substantial Evidence Supports the RFC Determination

Plaintiff asserts that substantial evidence does not support the assigned RFC with regard to the lack of reaching, handling, pushing, and pulling restrictions imposed and that the RFC fails to take into consideration restrictions associated with carpel tunnel syndrome ("CTS"). (ECF No. 15-2 at 11-12.) Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff could occasionally reach overhead with the left arm and had no other reaching restrictions, and that Plaintiff had no handling limitations because she did not satisfy her burden that her CTS was severe. (ECF No. 20-1 at 7-9.) The Court agrees with the defendant.

4

The RFC "is what the claimant can still do despite the limitations imposed by h[er] impairment." *Greek v. Colvin*, 802 F.3d 370, 374 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§ 416.945(a)(1), (3). The RFC, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Indeed, where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotation marks and citations omitted). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56.

With respect to Plaintiff's physical impairments, the ALJ limited Plaintiff to sedentary work, with additional exertional and environmental limitations, including that "[s]he can occasionally reach overhead with her left upper extremity." (R. at 16.) Substantial evidence supports the RFC determination. First, as discussed above and contrary to Plaintiff's assertion, the ALJ did not need to rely on a medical opinion to formulate the RFC. (ECF No. 15-2 at 14-15.). Second, Plaintiff contends that the ALJ failed to assign restrictions based on her left shoulder SLAP tear (*id.* at 15), but substantial evidence supports the finding that Plaintiff could occasionally reach overhead with the left arm and had no other reaching restrictions. *See* R. at 1531-34 (May 2020 MRI showing SLAP tear with no significant change since August 2018); R. at 821-25, 932-35, 1119-24, 1251-53, 1258-61 (Plaintiff failing to mention left shoulder symptoms at visits for back and legal pain in 2020); R. at 967 (Dr. Nicolescu observing normal range of motion in all joints in March 2021); R. at 979 (Dr. Kogan observing reached briskly

5

at and below should level with both upper extremities in the same month); R. at 1275 (Plaintiff showing normal range of motion in May 2021); R. at 1681-85 (Plaintiff reporting, in August 2021, left shoulder pain lasting for the prior *two weeks* only and showing full range of motion); R. at 1765 (Plaintiff showing normal movements in October 2021); R. at 1882 (Plaintiff demonstrating full range of motion in December 2021); R. at 1897 (Plaintiff showing 120 degrees of flexion in left shoulder in the same month). Furthermore, ALJ Aletta properly found that APRN Guglielmo's opinion that Plaintiff could not reach in any direction was not persuasive because his opinion was not supportable or consistent with the record. (R. at 21.) Therefore, Plaintiffs fails to demonstrate that the ALJ should have imposed greater reaching limitations in the assigned RFC.

Third, Plaintiff states that the ALJ should have assessed handling limitations due to her CTS, which the ALJ found to be non-severe. (ECF No. 15-2 at 12-15.) Plaintiff's argument is unpersuasive. Not only is it *Plaintiff's* burden to prove that her impairment is severe (*see* 20 C.F.R. § 416.922; *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022)), the record shows that Plaintiff demonstrated full sensation and normal reflexes in her hands and fingers. *See* R. at 979 (Dr. Kogan observing that Plaintiff used both hands to manipulate personal items briskly and with good dexterity); R. at 1786 (Plaintiff showing full strength, no dysmetria, intact fine finger and rapid alternating movements, and intact sensation in July 2021); R. at 1864-65 (Plaintiff showing normal strength and intact sensation in August 2021); R. at 1557 (same in September 2021); R. at 1755 (electrodiagnostic testing showing *mild* CTS in October 2021); R. at 1765 (examination showing Plaintiff's full strength and normal reflexes in the same month); R. at 1897 (examination in December 2021 showing full strength and intact sensation

in both upper extremities). Thus, the substantial evidence supports the ALJ's decision to not include handling limitations in the assigned RFC.

Fourth, Plaintiff argues that the assigned RFC "would not preclude her from pushing and pulling all day long." (ECF No. 15-2 at 14 n.10). As the Commissioner correctly notes, "the ALJ limited Plaintiff to sedentary work, which does not require pushing or pulling." *Zipporah M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1333 (DJS), 2022 WL 1115629, at *3 (N.D.N.Y. Apr. 14, 2022) (internal citations omitted); *see also* 20 C.F.R. § 404.1567(a). Given that sedentary work does not require these activities, the ALJ need not have included further restrictions on pushing and pulling.

Accordingly, the RFC determination is supported by substantial evidence. *John C. W. v. Kijakazi*, No. 3:21-CV-01081 (SALM), 2022 WL 3025718, at *11 (D. Conn. Aug. 1, 2022).[3]

---

[3] Plaintiff notes the ALJ failed to mention Plaintiff's fibromyalgia in assessing the RFC. (ECF No. 15-2 at 9 n.4.) Any error in the ALJ's failure to explicitly discuss fibromyalgia in his decision is harmless because it is evident that he considered Plaintiff's fibromyalgia symptoms, as testified to by Plaintiff at the hearing, at subsequent steps. *See Mendez v. Comm'r of Soc. Sec.*, No. 19-CV-01036, 2020 WL 6424141, at *6 (W.D.N.Y. Nov. 2, 2020) (stating that "the ALJ did not identify the impairment [of fibromyalgia] but considered the effects of the impairment [such as alleged pain] throughout the analysis of the claim and [thus] any error is harmless"). Moreover, Plaintiff has failed to meet her burden to show that her fibromyalgia imposed a greater restriction on her ability to work than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (holding that the claimant "had a duty to prove a more restrictive RFC, and failed to do so"); *White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) ("In any event, because [the plaintiff] never specified how his obesity further limited his functioning, any error on the ALJ's part was harmless."); *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d. Cir. 2008) (rejecting the argument that the ALJ did not adequately consider a plaintiff's fibromyalgia diagnosis when the plaintiff presented no medical finding that the condition caused marked limitations in functioning); *see also Ana H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-432 (DB), 2020 WL 6875252, at *10 (W.D.N.Y. Nov. 23, 2020) ("Plaintiff has failed to identify, based on objective evidence, that additional limitations were warranted because of [impairments not discussed]. Thus, she has failed to meet her burden of proving she could not perform the RFC as formulated by the ALJ.").

### B. The ALJ Properly Found that Plaintiff Did Not Meet or Equal Listing 1.15

Plaintiff asserts that the ALJ erred by concluding that her back/spinal impairments did not equal the requirements of any Listing. Plaintiff focuses particularly on Listing 1.15, which applies to disorders of the skeletal spine resulting in compromise of a nerve root. According to Plaintiff, reversal is required because the ALJ used the wrong legal standard in his analysis, as the listing does not have a requirement that the assistive device be regularly used. (ECF No. 15-2 at 17.) She further argues that substantial evidence shows that she has nerve root compression. (*Id.* at 19-20.) The Court disagrees. Substantial evidence in the record supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 1.15.

Each Listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). To satisfy her burden, a claimant must "meet *all* of the specified medical criteria [in the listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). A claimant may, however, satisfy a Listing if the claimant can show that her impairment is "medically equivalent" to a Listing, meaning that it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). To make that determination, the Commissioner "will look to see whether [the claimant's] symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3). The Commissioner will not, however, "substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [the] impairment(s) to that of a listed impairment." *Id.*; *see also*

*Knight v. Astrue*, 32 F. Supp. 3d 210, 218 (N.D.N.Y. 2012) (a claimant "must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques").

Additionally, to meet or equal a Listing, "it is not enough that scattered portions of the record might support certain of the required elements of a listing. Rather the 'claimant must show that he meets all the requirements of the listing <u>consistently</u>.'" *Aguirre v. Saul*, 568 F. Supp. 3d 477, 484 (S.D.N.Y. 2021) (quoting *John Q. v. Comm'r of Soc. Sec.*, No. 19-CV-1249, 2021 WL 1578297, at *6 (W.D.N.Y. Apr. 22, 2021)) (emphasis in original). "Put another way, 'when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another,' the claimant's condition does 'not rise to the level of severity required by' the Listing." *Kujtim M. v. Kijakazi*, No. 3:21-CV-00205 (TOF), 2022 WL 2965621, at *4 (D. Conn. Jul. 27, 2022) (quoting *Monsoori* v. *Comm'r of Soc. Sec.*, No. 1:17-CV-01161 (MAT), 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019)). Indeed, the regulations impose a "duration requirement" that, unless an impairment is expected to result in death, "it must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "In other words, plaintiff has the burden of showing that [s]he met each of the elements of a listing for a continuous period of 12 months." *Aguirre*, 568 F. Supp. 3d at 484.

Listing 1.15 requires a disorder of the spine resulting in compromise of a nerve root further documented by each of four sets of criteria, A, B, C, and D. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.15. None of these criteria are met here. <u>First</u>, the ALJ reasonably determined that Plaintiff did not regularly use an assistive device, that is, she did not use an assistive device continuously for at least twelve months. (R. at 15.) *See* R. at 665 (showing normal gait in

9

January 2020); R. at 822 (Plaintiff walking with assistance in June 2020); R. at 977-79 (Plaintiff telling Dr. Kogan in March 2021 that she used a walker "occasionally" but did not bring one with her to the examination); R. at 1191 (APRN Guglielmo opining that Plaintiff could walk without using a walker or two canes/crutches); R. at 1667 (Plaintiff showing normal gait in July 2021); R. at 1798 (same in August 2021); R. 1885 (Plaintiff walking on toes and heels in October 2021).

Second, the ALJ properly found that there is no evidence of nerve root compromise. "Compromise of a nerve root . . . is a phrase used when a physical object, such as a tumor, herniated disc, foreign body, or arthritic spur, is pushing on the nerve root *as seen on imaging or during surgery*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00.F.2 (emphasis added). Here, Plaintiff provides no imaging or proof that she had surgery showing nerve root compromise during the relevant time period. While she points to evidence of a disc herniation causing "displacement of the traversing S1 nerve root" in July 2019 (ECF No. 15-2 at 18), she underwent surgery for this condition the following month—four months before the disability onset date. (R. at 667.) In November 2019, imaging revealed mild disc bulges at L4-5 and L5-S1 with no indication of nerve root compromise. (R. at 625-26.)

Third, the record lacks evidence of consistent muscle weakness or consistent sensory or reflex abnormalities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.15.B.1, 1.15.B.3, 1.15.B.4. *See* R. at 665, 1094, 1275, 1557, 1751, 1779, 1786, 1793, 1885 (Plaintiff showing normal muscle strength in lower extremities in January 2020, May 2021, July 2021, September 2021, and October 2021); R. at 665, 1557, 1685, 1765, 1770, 1786, 1793, 1885 (showing no sensory or neurological deficits and normal reflexes in January 2020, March 2021, May 2021, July 2021, August 2021, September 2021, and October 2021).

Accordingly, ALJ Aletta properly found that Plaintiff's impairments did not meet or equal Listing 1.15.

### C. The ALJ's Decision is Sufficiently Detailed to Allow Review

Plaintiff's last argument is that the ALJ's decision is not detailed enough to allow a district court to review it because the ALJ "support[s] his finding by citing only to exhibit numbers" and in finding the CTS to be non-severe, "made reference to only exhibit 34, and a[n unidentified] 'contemporaneous' exam." (ECF No. 15-2 at 21-22.)

"Nothing requires the ALJ to cite to specific pages of the record in support of every one of his findings. *See, e.g.*, *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that '[a]n ALJ does not have to state on the record every reason justifying a decision,' that 'an ALJ is not required to discuss every piece of evidence submitted,' and that '[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered')." *Connole v. Astrue*, No. 3:10-CV-01382 (JAM), 2016 WL 1626816, at *3 (D. Conn. Apr. 25, 2016). And as far as the ALJ's CTS determination, the ALJ accurately cited Exhibit 34F as containing electrodiagnostic testing confirming "mild" carpal tunnel syndrome in October 2021. (R. at 13.) The record, at Exhibit 34B, contains an October 2021—i.e., "contemporaneous"—treatment note documenting no neurological deficits (R. at 1765), Dr. Fattahi's July 2021 observation of full strength, no dysmetria, intact fine finger and rapid alternating movements, and intact sensation (R. at 1786), as well as ample other evidence showing that Plaintiff's CTS was non-severe.

Therefore, the ALJ's decision is sufficiently detailed to allow the Court to review.

11

## IV. CONCLUSION

For these reasons, the Commissioner's motion to affirm the Commissioner's decision (ECF No. 20) is **GRANTED** and Plaintiff's motion to reverse the Commissioner's decision (ECF No. 16) is **DENIED**. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
March 27, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge